## M. L. LEARD v. STATE.

No. A-4594. Opinion Filed Feb. 21, 1925.
Rehearing Denied April 27, 1925.
(235 Pac. 243.)

(Syllabus.)

1. **Appeal and Error—Venue—Right to Change of Venue—Burden of Proof—Discretion of Court.** The presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense was committed, and upon an application for change of venue from such county the burden is on the defendant seeking such change to establish his right thereto. The granting or refusal of a change of venue is largely in the discretion of the trial court, and the reversal of a case for failure to grant a change of venue will not be made, unless it is made to clearly appear that the trial court abused its discretion, to the prejudice of the applicant.

2. **Jury—Prospective Juror not Disqualified Because of Opinion**

**Formed from Newspaper Accounts or Current Rumor.** The prospective juror is not disqualified by reason of having an opinion in a case formed from reading newspaper accounts or from current rumor, not obtained from personal knowledge of the facts, or from witnesses who purport to know the facts, when he testifies that he can and will, and the court finds that he would, if selected, render a fair and impartial verdict.

3. **Witnesses—Physician Examining Person at Direction of Prosecuting Attorney.** A physician, who makes an examination of a person at the direction of a prosecuting attorney, if he does not assume to act as a physician for such person, and is not called or employed as a physician by or for the person examined, is a competent witness to testify regarding the information gained in such examination.

4. **Appeal and Error—Harmless Error—Exclusion of Evidence.** The exclusion of evidence will not constitute reversible error, where it reasonably appears that its admission would not have affected the verdict.

5. **Rape—Evidence Sustaining Conviction.** Evidence examined, and found to sustain the verdict of the jury.

Appeal from District Court, Okfuskee County; John L. Norman, Judge.

M. L. Leard was convicted of rape in the first degree and sentenced to a term of 15 years in the state penitentiary, and he appeals. Affirmed.

See, also, 24 Okla. Cr. 141, 216 P. 1118.

Crump, White & Seawel, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error assigns several errors as reasons for reversing this case: First, that the court erred in overruling plaintiff in error's application for a change of venue; second, that the court erred in overruling plaintiff in error's challenge for cause to certain jurors; third, that the court erred in excluding competent evidence offered on the part of plaintiff in error; fourth, that the evidence is insufficient to sustain the verdict.

On the application for change of venue, the plaintiff in error filed an affidavit, with four supporting affidavits, to the effect that the minds of the inhabitants of Okfuskee county were so prejudiced against him that he could not obtain a fair trial therein. In addition the sheriff of Okfuskee county testified that there had been talk of mob violence. The county attorney made a counter showing. We have examined carefully the record on this point, and adhere to the rule, heretofore adopted by this court, that the granting or refusing of a change of venue is within the sound discretion of the trial court, and a case will not be reversed unless there is abuse of such discretion. We believe that there is no such showing of the inability of plaintiff in error to get a fair trial in Okfuskee county as would constitute an abuse of discretion. Starr v. State, 5 Okla. Cr. 440, 115 P. 356; Turner v. State, 4 Okla. Cr. 164, 111 P. 988; Hopkins v. State, 4 Okla. Cr. 197, 108 P. 420, 111 P. 947; Black v. State, 3 Okla. Cr. 547, 107 P. 524; Edwards v. State, 9 Okla. Cr. 306, 131 P. 956, 44 L. R. A. (N. S.) 701; Bouie v. State, 9 Okla.. Cr. 345, 131 P. 953; Tegeler v. State, 9 Okla. Cr. 138, 130 P. 1164.

The plaintiff in error contends that the court erred in overruling the challenge for cause to the jurors Eskridge, Catlett, Finney, Turner, and Board, and that they each disclosed on their voir dire examination that they had an opinion such as would disqualify them. The juror Eskridge testified that he had read something about the case, and had formed an opinion from so reading which would take evidence to remove. He did not testify, however, that it was a fixed opinion, and on being further examined testified as follows:

"Q. Could you disregard that opinion, even though you have an opinion, Mr. Eskridge, and try the case according to the testimony you will hear in the progress of the trial without any reference to your opinion? A. I believe I could.

"Q. Can you and will you do it, if selected as a juror? A. Yes. * * * ·

"Q. If selected as a juror in this case, will you go into the jury box and try the case under the instructions of the court, and take that as the law, and take the testimony of the witnesses introduced here as the evidence, and try the case fairly and impartially, both to the state and the defendant? A. Yes, sir."

The jurors Catlett, Finney, and Board testified in effect the same as the juror Eskridge. The juror Turner was objected to not because he had an opinion as to the guilt or innocence of the plaintiff in error, but because he stated in response to questions by counsel for plaintiff in error that, if the accused admitted having intercourse with prosecutrix, he would not feel that it was justifiable. But he did testify that, notwithstanding such might be the case, he would not be prejudiced thereby, but would give the plaintiff in error a fair trial. We know of no rule that requires a juror to approve the moral code of a defendant in order to be qualified to serve in the trial of a case.

A juror is not disqualified by reason of having an opinion resulting from reading newspaper accounts of the crime charged, or from current rumors, provided it appears to the court, upon the declaration of the juror, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly. The trial court, of course, is not limited to the answers made by the jurors on their voir dire, but should be satisfied, from such examination and from all the circumstances, that the juror is not prejudiced against the accused. The question of competency of a juror is addressed to the sound discretion of a trial court, and the court should be clearly satisfied that a juror is fair and impartial before permitting him to sit in a criminal case. On an appeal to this court, in order to warrant a reversal on this point, it must be made clearly to appear that the trial court abused its discretion. All the jurors complained of were excused by peremp-

tory challenge, and it does not appear that any objectionable juror was on the trial panel. Section 2678, Comp. St. 1921; Johnson v. State, 1 Okla. Cr. 323, 97 P. 1059, 18 Ann. Cas. 300; Turner v. State, 4 Okla. Cr. 164, 111 P. 988; Jones v. State, 8 Okla. Cr. 576, 129 P. 446; Tegeler v. State, 9 Okla. Cr. 138, 130 P. 1164, supra; Littrell v. State, 22 Okla. Cr. 1, 209 P. 184.

Some four days after the offense charged in the information, the county attorney had a physician, Dr. C. M. Bloss, make a physical examination of the prosecuting witness. The physician was not called as a witness by the state, but was offered as a witness for the plaintiff in error, and objection was made to his testimony as being privileged. Section 589, Compiled St. 1921, is as follows:

"The following persons shall be incompetent to testify: * * * Sixth. A physician or surgeon, concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient. * * *"

The plaintiff in error, however, contends that the relation of physician and patient did not obtain in this case, for the reason that it is shown that the county attorney was present at the examination, and the physician was called by the county attorney. We believe the contention is well taken that the witness was competent and should have been permitted to testify. In 28 R. C. L. 539, par 129, the general rule is laid down as follows:

"It is well settled that, in order for privilege to exist in the case of a communication made to or by a physician or surgeon, relation of physician and patient must exist between the physician and the patient by or to whom the communication is made. Where there is no confidential relation, there is no privilege. The privilege extends only to information acquired during the continuation of the relation of physician and patient, and does not preclude a physician from testifying as to information respecting

a patient which he acquired either before the relation began or after its termination. An objection to the testimony of physicians that it discloses a privileged communication cannot be sustained, when it relates to an examination made of a party, who did not make any communication to them nor submit to their examination with the idea that they were acting as his physicians, and a physician employed by one whose negligence is alleged to have caused an accident, to be present at an operation upon the injured person, without the latter's consent, is not incompetent to testify to what he observed there. Furthermore, if the physician does not act in a professional capacity to treat, but for some independent purpose known to the person examined, no privilege ordinarily attaches. Thus a physician, who at the direction of a prosecuting attorney or a court makes an examination of a defendant for the purpose of determining his physical condition, is competent to testify regarding the information he gained, if he does not assume to act as the physician for the patient, or proffer to the latter his professional aid."

Numerous authorities are cited in support of the text. Substantially the same rule is announced in 40 Cyc. 2382, subdivision (b). See, also, State v. Winnett, 48 Wash. 93, 92 P. 904; Clark v. State, 8 Kan. App. 782, 61 P. 814; Gleason v. Jones, 79 Okla. 191, 192 P. 203, 16 A. L. R. 450.

The evidence of Dr. Bloss was developed in the presence of the court, in the absence of the jury, and it is not, we think, very important. The witness was hesitating, uncertain, and with no distinct recollection of the matter. His testimony was merely to the effect that at the time of his examination he did not see any wounds or bruises on the limbs of the prosecuting witness, and did not recall any evidence of recent intercourse. To our minds the evidence excluded, if admitted, would not have changed the result. 12 Cyc. 925, and authorities cited in note 85; Addington v. State, 8 Okla. Cr. 703, 130 P. 311.

Lastly, it is urged that the evidence is insufficient to sustain the verdict of the jury. The evidence, briefly sum-

marized, discloses about this state of facts: The prosecuting witness was a young woman 20 years old at the time of the occurrence, weight about 90 pounds, and engaged in teaching a country school. The plaintiff in error was 44 or 45 years old, weight, according to his own evidence, 185 pounds, a married man, and was at the time a deputy sheriff. The school of prosecuting witness closed on May 11th, and the plaintiff in error took prosecutrix to his home, where he resided with his wife; there she spent the night, and the next day he took her in a Ford car to Okemah. On the road from his home to Okemah he drove off the main highway and stopped the car. According to the state's evidence, he then attempted to have the prosecutrix take a walk with him, and she refused. He then drove on to a secluded place, and, according to her evidence, lifted her out of the car and forcibly ravished her, and that she resisted to the utmost of her ability. He then took her on to Okemah. On the way they stopped at a schoolhouse, and got a drink of water, and from Okemah she rode out with a family a distance toward her home, and then walked the remainder of the distance. As soon as she reached home, she disclosed the matter to her mother. The details, of course, were testified to fully.

The plaintiff in error was arrested on the 16th, and on the road to town escaped from the officers and went to Mexico, and was finally arrested in Louisiana and brought back to this state. He testified in his own behalf, admitted the detour from the highway to the secluded place, admitted the intercourse, but testified that it was with the consent of the prosecutrix, and explained his flight by saying that he feared mob violence. One witness who was called for the state testified that he was a deputy sheriff, and that, between the time of the occurrence and the arrest of the plaintiff in error, the plaintiff in error told him of an occurrence corresponding to and corroborating in many particulars the evidence of the prosecuting witness; but

the conversation did not identify the transaction as having been with the prosecuting witness, but, from the details given, must have referred to it. Aside from that, there was no corroboration of the prosecutrix that the act was accomplished by force.

The charge is grave and the punishment severe, but the evidence is ample and bears on its face no inherent improbability. There is no motive for false accusation. The weight and credibility of the evidence is for the jury, who saw and observed the witnesses. We are not at liberty to disturb the verdict on the ground of insufficiency of the evidence. The plaintiff in error was ably represented.

After carefully scrutinizing the whole record, we believe the case is free from prejudicial error, and it is therefore affirmed.

BESSEY, P. J., and DOYLE, J., concur.