[No. 59433-3.   En Banc.   December 10, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. STEVEN N. BURDEN, *Respondent*.

372

C. *Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky* and *Donald J. Porter, Deputies,* for petitioner.

*Roger A. Hunko,* for respondent.

DOLLIVER, J. — Plaintiff, the State of Washington, appeals the trial court's ruling excluding third person testimony of extrajudicial statements made by Mary K. Burden, the wife of the defendant Steven N. Burden, based upon the spousal testimonial privilege in RCW 5.60.060(1).

On April 27, 1992, defendant Steven N. Burden was arrested in Kitsap County charged with one count of first degree possession of stolen property and three counts of investment of proceeds of criminal profiteering into real estate. On June 11, 1992, the State amended the information charging defendant with an additional 34 felony counts

consisting of 28 counts of first degree possession of stolen property, 1 count of investment of proceeds of criminal profiteering into real estate, 3 counts of second degree possession of stolen property, 1 count of attempted investment of proceeds of criminal profiteering, and 1 count of conspiracy to commit first degree theft.

The charges were the culmination of an investigation into Mary and Steven Burden's activities throughout the Midwest and West in a price switching and cash refund scam. The defendant allegedly used the proceeds of the scam to invest in real property in Kitsap County. During the course of the investigation, the police became aware of inculpatory statements made by Mary Burden to third persons, including statements to her pastor, her brother, Kitsap County police officers, and various department store cashiers. On June 15, 1992, the defendant filed a motion in limine seeking an order excluding third person testimony of all out-of-court statements made by Mary Burden which concerned any aspect of the pending charges.

On June 16, 1992, the trial court granted the motion ruling the testimonial privilege barred the admission of the testimony. The State appealed to the Court of Appeals and requested an emergency stay of proceedings pending the result of the appeal. A temporary stay was entered on June 17, 1992, which halted all proceedings except for completion of the CrR 3.6 hearing. Because of the stay, the defendant has yet to be arraigned on the additional charges brought by the State, but remains in custody on the initial charges. Review was granted on June 22, 1992, and a ruling accelerating review was entered on June 25, 1992. The Court of Appeals certified the case to this court. We reverse.

The testimonial privilege is contained in RCW 5.60.060(1), which provides:

> *A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband*; nor can either during marriage or afterward, be without the consent of the

other, examined as to any communication made by one to the other during marriage. . . .

(Italics ours.) This provision also contains the marital communications privilege, not at issue in this case, which protects confidential communications made during marriage. *See State v. Thorne*, 43 Wn.2d 47, 54-55, 260 P.2d 331 (1953).

Here, the defendant asserts admission of Mary Burden's extrajudicial statements by third persons would indirectly violate the testimonial privilege and place him in the position of having to waive the privilege to refute the testimony or allow the testimony without cross examination.

We have previously rejected this argument. *See State v. Kosanke*, 23 Wn.2d 211, 160 P.2d 541 (1945). In *Kosanke*, the court admitted third person testimony as to extrajudicial statements made by the defendant's wife regarding her effort to persuade the parents of the victim not to be present for her husband's trial for indecent liberties and carnal knowledge of their child. The defendant, as in this case, argued the admission of the testimony indirectly violated the testimonial privilege and placed him in the position of having to waive the privilege to refute the testimony. The court, however, stated:

> [T]he court [has not gone] so far as to hold that relevant and material evidence could not be adduced merely because, in order to refute the same, the wife of a defendant might have to be called as a witness. In this case the wife of appellant was not called as a witness by respondent, nor was the attention of the jury called to her in such a way as to require objection on the part of appellant in order to preserve his rights under the statute. . . . [T]he fact that refutation of competent evidence would require the wife being a witness does not make it erroneous to adduce the testimony. *The statute [testimonial privilege] was not violated either directly or indirectly.*

(Italics ours.) *Kosanke*, 23 Wn.2d at 217-18.

We do not, however, rest our decision solely on *Kosanke* because the court did not consider whether the exclusion of third person testimony of a spouse's extrajudicial statements serves the purposes behind the testimonial privilege. *See Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992)

(statutes are interpreted to best advance the legislative purpose).

■ The purpose of the testimonial privilege is to "foster[] domestic harmony and prevent[] discord." *Thorne*, 43 Wn.2d at 55. The privilege also reflects the "natural repugnance" of having one spouse testify against the other, and prevents the testifying spouse from having to "choose between perjury, contempt of court, or jeopardizing the marriage." *See State v. Wood*, 52 Wn. App. 159, 163, 758 P.2d 530 (1988); Comment, *The Marital Privileges in Washington Law: Spouse Testimony and Marital Communications*, 54 Wash. L. Rev. 65, 70 (1978-1979).

■■ We find the latter two purposes will not be affected by allowing third person testimony because the spouse is not testifying in court.

> This is not a case where the prosecution called the [spouse] to the stand. If [the spouse] had testified under those circumstances, the common law rule would have been violated. Here, however, we are one step removed from actual testimony. Therefore, there is no chance that we might be repulsed by a spouse actually testifying against his mate[.] Nor is there a chance that marital frictions will be aggravated . . . for there is the convenient buffer of the third person actually making the remarks.

(Citations omitted.) *United States v. Mackiewicz*, 401 F.2d 219, 225 (2d Cir.), *cert. denied*, 393 U.S. 923 (1968); *see United States v. Tsinnijinnie*, 601 F.2d 1035, 1039 (9th Cir. 1979) (quoting the same rationale), *cert. denied*, 445 U.S. 966 (1980).

As to whether the exclusion of third person testimony of a spouse's extrajudicial statements will prevent marital discord or foster harmony, we note the marital harmony rationale behind the testimonial privilege, itself, has been extensively criticized as "lacking modern justification." *See State v. White*, 50 Wn. App. 858, 862, 751 P.2d 1202 (1988) (citing S. Stone & R. Liebman, *Testimonial Privileges* § 5.02, at 335 (1983)); *see also* Comment, 54 Wash. L. Rev. at 88 (citing 8 J. Wigmore, *Evidence* § 2228 (rev. ed. 1961)); Medine, *The Adverse Tes-*

*timony Privilege: Time To Dispose of a "Sentimental Relic"*, 67 Or. L. Rev. 519 (1988). Although the viability of the privilege itself is not at issue, we are not convinced the marital harmony rationale justifies a construction of RCW 5.60.060(1) which excludes third person testimony of spousal extrajudicial statements. Privileges are narrowly construed to serve their purposes so as to exclude the least amount of relevant evidence. *See Kosanke*, 23 Wn.2d at 217; *Wood*, 52 Wn. App. at 163; *Breimon v. General Motors Corp.*, 8 Wn. App. 747, 751, 509 P.2d 398 (1973).

The marital harmony rationale does not realistically justify the exclusion of third person testimony.

> ". . . A person holds no privilege to prevent his or her spouse from making adverse statements abroad in the world, and if this occurs and is revealed in court [by a third person], it is the fact of the out-of-court conduct of the spouse, not the advent of the trial, which is the source of any strain upon the marriage." . . .
> . . . [W]hen a marriage has deteriorated to the point where one spouse makes statements damaging to the other, that marriage will usually proceed to its fate regardless of how the spousal privilege is applied.

*Tsinnijinnie*, 601 F.2d at 1039 (quoting 2 D. Louisell & C. Mueller, *Federal Evidence* § 218, at 624 (1978)). Both *Tsinnijinnie* and *Mackiewicz* held the admission of third person testimony of a spouse's extrajudicial statements did not violate the testimonial privilege. These cases are persuasive because both were decided prior to the Supreme Court's decision placing the testimonial privilege exclusively with the witness spouse. *Compare Trammel v. United States*, 445 U.S. 40, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980) *with Hawkins v. United States*, 358 U.S. 74, 3 L. Ed. 2d 125, 79 S. Ct. 136 (1958).

The Washington cases cited by defendant in support of prohibiting such testimony are not persuasive. Neither *State v. Clark*, 26 Wn.2d 160, 173 P.2d 189 (1946) nor *State v. Thorne*, 43 Wn.2d 47, 260 P.2d 331 (1953) directly held such testimony was inadmissible and neither provides a considered analysis as to whether the purposes behind the

privilege are served by the exclusion of third person testimony.

The summary statement in *Clark* regarding the exclusion of such testimony is supported only by a citation to *State v. Winnett*, 48 Wash. 93, 92 P. 904 (1907). *See Clark*, 26 Wn.2d at 168. That case holds only that a wife may not indirectly testify against her husband through her own presence in the courtroom.

Likewise, *Thorne* does not directly address the issue of third person testimony. There, the question was whether testimony of an eavesdropper as to an overheard conversation between husband and wife violated the communications or the testimonial privilege. *Thorne*, 43 Wn.2d at 57. The court held the testimonial privilege was not implicated in the context of overheard conversations while, at the same time, appearing to approve *Clark*. *See Thorne*, 43 Wn.2d at 57. We find these two positions inconsistent because third person testimony regarding an overheard conversation does implicate the testimonial privilege to the extent that privilege would prohibit the nonparty spouse from relating the conversation. Construing the testimonial privilege to exclude only in-court testimony of a spouse, as we do today, reconciles this inconsistency by allowing third person testimony only if not excluded under either the testimonial or the communications privileges.

This construction is also consistent with permitting statements of one spouse to establish probable cause for an arrest or search of property of the other spouse. *See State v. Bonaparte*, 34 Wn. App. 285, 660 P.2d 334, *review denied*, 100 Wn.2d 1002 (1983); *State v. Diana*, 24 Wn. App. 908, 604 P.2d 1312 (1979); *State v. Osborne*, 18 Wn. App. 318, 569 P.2d 1176 (1977).

We find the purposes behind the testimonial privilege are not served by excluding third person testimony of a spouse's extrajudicial statements and hold the admission of such testimony does not violate RCW 5.60.060(1).

Our holding is in accord with the majority of other states having statutes placing the testimonial privilege with the

defendant spouse or with both spouses. *See Engberg v. Meyer*, 820 P.2d 70 (Wyo. 1991); *State v. Johnson*, 236 Neb. 831, 464 N.W.2d 167 (1991); *People v. Williams*, 181 Mich. App. 551, 450 N.W.2d 85 (1989); *State v. Bailey*, 179 W. Va. 1, 365 S.E.2d 46 (1987); *Ballard v. State*, 252 Ga. 53, 311 S.E.2d 453 (1984); *Wells v. Commonwealth*, 562 S.W.2d 622 (Ky.), *cert. denied*, 439 U.S. 861 (1978); *State v. Schifsky*, 243 Minn. 533, 69 N.W.2d 89 (1955). *But see Bayse v. State*, 420 So. 2d 1050 (Miss. 1982).

The trial court's ruling excluding third person testimony as to all extrajudicial statements by Mary Burden pursuant to RCW 5.60.060(1) is reversed. The testimony, however, must still meet other requirements for admissibility.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.